UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KAYCE SMITH, individually and on behalf of all others similarly situated,

Case No.:   3:23-CV-1509 (AMN/ML)

Plaintiff,

**COMPLAINT**

v.

**JURY TRIAL DEMANDED**

JKS HOME IMPROVEMENT, LLC, JEREMY SAGER, and BRITTANY SAGER,

Defendants.

Plaintiff Kayce Smith ("Plaintiff"), individually and on behalf of all other similarly situated persons, by and through her undersigned counsel, alleges upon personal knowledge as to herself and upon information and belief as to other matters (which is based on, among other things, her experiences at Defendants' facilities, review of Defendants' records, conversations with Defendants' employees and investigation of her counsel), as follows:

## NATURE OF ACTION

1.      Plaintiff brings this action on behalf of herself and all other similarly situated current and former hourly paid and non-exempt employees ("Hourly Employees") of JKS Home Improvement, LLC ("JKS"), Jeremy Sager, and Brittany Sager (collectively, "Defendants").

2.      JKS provides residential construction services throughout the Southern Tier of New York. More specifically, JKS provides, *inter alia*, roofing, siding, window, and gutter services and markets itself as a leading home improvement contractor.  Jeremy Sager and Brittany Sager are the owners of JKS and the joint employers of the Hourly Employees.

3.      Throughout the relevant period, Defendants employed approximately 100 current and former Hourly Employees.

4.      As particularized below, Defendants have engaged in illegal and improper wage practices and policies that have deprived Hourly Employees of millions of dollars in wages and overtime compensation.  These practices include (a) improperly compensating Hourly Employees based only upon their scheduled hours rather than the actual time they worked; and (b) automatically deducting time for meal breaks when Hourly Employees perform work during that time.  Furthermore, Defendants failed to provide Hourly Employees with appropriate pay rate acknowledgement forms and weekly wage statements.  These illegal practices and policies are uniform throughout Defendants' facilities and have been known to Defendants for years.

5.      For these reasons, Plaintiff brings this action on behalf of herself and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), §§ 190, *et seq.*, 195(1), 195(3), §§ 650, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

7.      This Court also has original jurisdiction over all claims in this action pursuant to 28 U.S.C. § 1332(d) (*i.e.*, the Class Action Fairness Act).  This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative

fact.

9.      This Court has personal jurisdiction over JKS as it is an entity that is organized and existing under the laws of the State of New York, with its principal places of business located in New York, which regularly transacts business in the State of New York. Additionally, Plaintiff's causes of action arise out of JKS's conduct in the State of New York.

10.     This Court has personal jurisdiction over Jeremy Sager as he is a resident of the State of New York. This Court also has personal jurisdiction over Jeremy Sager because Plaintiff's causes of action against him arise out of and relate to his systemic and continuous contact with the forum state, including his ownership interest in JKS and employment of Plaintiff. Among other things, Jeremy Sager has purposefully availed himself of the privilege of conducting activities within this District, including through his ownership interest in JKS and employment of Plaintiff, such that maintenance of this action against Jeremy Sager in this District does not offend traditional notions of fair play and substantial justice.

11.     This Court has personal jurisdiction over Brittany Sager as she is a resident of the State of New York. This Court also has personal jurisdiction over Brittany Sager because Plaintiff's causes of action against her arise out of and relate to her systemic and continuous contact with the forum state, including her ownership interest in JKS and employment of Plaintiff. Among other things, Brittany Sager has purposefully availed herself of the privilege of conducting activities within this District, including through her interest in JKS and employment of Plaintiff, such that maintenance of this action against Brittany Sager in this District does not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants maintain their principal place of business in this District

and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

### Plaintiff

13.     Plaintiff, Kayce Smith, is currently a resident of Johnson City, New York and is a former non-exempt hourly employee of Defendants.

14.     More specifically, Plaintiff was employed by JKS as an Administrative Assistant from September 19, 2021 until in or around February 2023.  Throughout her employment, Plaintiff was a full-time Hourly Employee and paid an hourly rate of $17.00.  Plaintiff's job duties as an Administrative Assistant included, among other tasks: (a) scheduling crews for home calls; (b) providing roof fix estimates to customers and clients; (c) filing internal documents for JKS; and (d) calling vendors and clients for status updates.

15.     During the entirety of her employment, Plaintiff was scheduled to work at least 40 hours per week.  More specifically, throughout her employment, Plaintiff was scheduled to work from 8:00 a.m. until 4:30 p.m., 5 days per week.  Plaintiff's scheduled hours included an automatically deducted meal break of 30 minutes per day.  Thus, Plaintiff was scheduled to work 40 hours per week, and 42.5 hours per week inclusive of her meal period.  As further set forth herein, Plaintiff routinely worked before and/or after her scheduled shift and during her uncompensated meal break, but was not properly compensated for all hours worked, including overtime at the applicable rate of one and one-half times her regular hourly rate.

16.     As an Administrative Assistant, Plaintiff could not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which she worked.  Plaintiff could not hire or fire other Hourly Employees.  Plaintiff also could not pick and choose a particular post during any of her given shifts, but rather she was assigned a particular post by her supervisors.

Despite this lack of independent discretion, through the entirety of her employment, Plaintiff was not properly compensated for all hours worked.

17.     Specifically, throughout Plaintiff's employment, she was asked to and performed essential work prior to the beginning of her scheduled shift as well as subsequent to the end of her scheduled shift.  However, Plaintiff was only compensated based on her scheduled hours, rather than the actual hours she spent working on Defendants' behalf.

18.     To this end, Plaintiff recorded her scheduled hours each week on a sign-in sheet. At the commencement of her employment, Plaintiff was specifically instructed to record her scheduled hours on the sign-in sheet and not the actual hours she was working for Defendants. Therefore, regardless of the number of hours which Plaintiff actually worked, she was only compensated according to her scheduled time.  As a result of Defendants' improper schedule-based pay practices and policies, Plaintiff was deprived compensation for all hours worked.

19.     In fact, on most days throughout the course of her employment Plaintiff would arrive to work approximately 15 minutes prior to the start of her scheduled shift and immediately began performing her ordinary job-related duties, but she was only compensated as if she began work at 8:00 a.m.  Additionally, approximately 2-4 times per month, Plaintiff would work approximately 10-20 minutes beyond the end of her scheduled shift performing her ordinary job-related duties as required by the needs of her employer. However, Plaintiff was only compensated based on the end of her scheduled shift and was not compensated for the additional time spent working.  As a result of Defendants' improper schedule-based pay practices and procedures, Plaintiff routinely worked off-the-clock without compensation, including overtime for which she was not compensated at the overtime rate of one and one-half times her regularly hourly rate.

20.     By way of a specific example, during the week of January 23, 2023 to January 27,

2023, Plaintiff began work approximately 15 minutes before the start of her scheduled shift every single day, but was compensated only based on her scheduled start time of 8:00 a.m. During this same week, on January 24, 2023, Plaintiff worked until approximately 4:45 p.m., but was only paid based on the end of her scheduled shift (*i.e.*, 4:30 p.m.). Similarly, during the week of August 1, 2022 to August 5, 2022, Plaintiff began work at approximately 7:45 a.m. each day and worked approximately 10-20 minutes after the end of her scheduled shift numerous times during this week, but was only paid based on her scheduled hours. These are but a few examples of the many times during Plaintiff's employment when she worked before and/or after the end of her scheduled shifts—all of which was with Defendants' knowledge—but was only paid based on her scheduled hours.

21.    Plaintiff was engaged in essential and integral work on the Defendants' behalf during this and all other pre- and post-shift periods in which she was working but not compensated. Work performed during the pre- and post-shift periods include some or all the job duties referenced above. This pre- and post-shift work was significant, integral and indispensable to the performance of job-related duties, was not a *de minimis* task or request, and was predominantly for the Defendants' benefit.

22.    Additionally, Plaintiff's compensation was automatically deducted each day for a 30-minute unpaid meal break; however, Plaintiff routinely worked during all or portions of this uncompensated meal break but was not paid for such time worked. In fact, Plaintiff worked during her uncompensated meal break nearly every single day of her employment. Work performed during uncompensated meal breaks includes those duties described above. Plaintiff, however, was not paid for any of the time spent working during her uncompensated meal break.

23.    Plaintiff's managers and supervisors were well aware that Plaintiff routinely

worked before and/or after the start of her scheduled shifts and during uncompensated meal breaks, but did nothing to ensure Plaintiff was paid for this time. In fact, Plaintiff's supervisors, including Brittany Sager, Theodore Unger, and Ashley Jones, knew that Plaintiff was performing work before and after her scheduled shifts, as well as during meal breaks, but did nothing to rectify the situation or compensate Plaintiff for her time.

24.     Other Hourly Employees were likewise instructed to record their scheduled hours, rather than their actual hours worked, on their sign-in sheets despite routinely working hours for Defendants before and/or after their scheduled shifts. Likewise, Hourly Employees regularly worked during all of portions of their uncompensated meal breaks, but were not compensated for this additional time worked.

25.     These other similarly situated Hourly Employees include, but are not limited to, Megan Morris, Ashley Jones, William Brown, Dan Klinthek, Maynor [last name unknown], Aidan Raminbino, Arylan [last name unknown], Jerell [last name unknown], Noah Ferguson, and Maria [last name unknown].

26.     Thus, because of Defendants' improper compensation policies, and as described more fully below, Plaintiff and all other Hourly Employees were deprived of wages as required by the FLSA and NYLL, including straight and overtime compensation.

27.     Finally, Defendants never provided Plaintiff with proper pay rate acknowledgement forms at the commencement of her employment and when she received a change in her hourly rate of pay as required under NYLL §195(1), nor was she provided with appropriate weekly wage statements as required by NYLL §195(3).

**Defendants**

28.     JKS is a privately held limited liability company conducting business in the

Northern District of New York. JKS was established under the laws of New York and maintains its principal place of business at 3400 East Main Street, Endwell, New York, 13760.

29.     According to its website, JKS provides, among other things, housing, roofing, siding, window, and gutter services throughout the Southern Tier of New York.  JKS further markets itself as a leading home improvement contractor, touting the company as a "third generation family owned and operated construction business, bringing you years of experience on the field."  Throughout the relevant period, JKS has employed approximately 100 current and former Hourly Employees.

30.     Jeremy Sager is the co-owner of JKS and resides and is domiciled in this District.

31.     Brittany Sager is a co-owner of JKS and acts as the manager and supervisor of JKS. Brittany Sager resides and is domiciled in this District.

## FACTUAL ALLEGATIONS

### Background

32.     Throughout the relevant period, Defendants have employed approximately 100 current and former Hourly Employees.

33.     Defendants hired Plaintiff and promised to pay her hourly wages for her work.  Full-time Hourly Employees are paid hourly wages based upon their job description and tenure that range between minimum wage and approximately $25.00 per hour and have a standard work week of 40 hours.

34.     Hourly Employees are required to record their scheduled hours on sign-in sheets and are specifically instructed not to record the actual time they spent working before and/or after their scheduled shifts.  Defendants' improper schedule-based pay policies and practices apply to all Hourly Employees, regardless of their job title, duties, responsibilities, or department.

{N0665543.1}

35.     Defendants' management personnel know that Hourly Employees are only compensated for pre-scheduled hours and that Hourly Employees are therefore not compensated for all hours worked.

**Defendants Failed to Provide Plaintiff and Hourly Employees With
Timely and Appropriate Wage Statements and Pay Rate
Acknowledgement Forms As Required Under NYLL**

36.     Defendants failed to provide Plaintiff and all other Hourly Employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL § 195(3).

37.     Defendants failed to provide Plaintiff and all other Hourly Employees at the time of hiring and when they received their hourly rate of pay, a statement in English and the Hourly Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employers' main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

38.     Specifically, because Defendants failed to compensate Plaintiff and Hourly Employees for all hours worked, the pay statements provided to Plaintiff and Hourly Employees

were inaccurate and incomplete, including failing to provide the correct number of hours worked and the correct amount of pay owed. The requirement that employers, including Defendants, provide Plaintiff and Hourly Employees with accurate wage notices and wage statements is meant to protect Plaintiff's and Hourly Employees' interest in being paid what they are owed. Plaintiff and Hourly Employees were harmed as a direct result of Defendants' failure to provide accurate weekly wage statements, including hindering Plaintiff's ability to determine whether she was being compensated for all hours worked and whether she was being compensated at the appropriate rate of pay. As a result of Defendants' violation of NYLL §§ 195(1) and 195(3), Plaintiff and Hourly Employees were undercompensated for years.

39.    Accordingly, Plaintiff seeks certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective Class) or six years (New York Class) preceding the filing of this action and who were: (a) not properly compensated for all work performed for Defendants, including for work performed prior to the start of their scheduled shifts or after the conclusion of their scheduled shifts; and/or (b) were required to work during some or all of their uncompensated meal breaks, but were not compensated for this time; and/or (c) were not fully compensated for time worked over forty hours per week at overtime rates; and/or (d) not provided proper notice under NYLL §195(1) and NYLL §195(3).

**Defendants Exercise Control Over JKS's Wage Policies and Practices**

40.    The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  Additionally, Defendants have the power to control wage policies and practices of Plaintiff and Hourly Employees through their oversight of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly Employees' rate of pay, and ability to control record-keeping practices.

41.    By virtue of their positions, roles and conduct as described herein, JKS, Jeremy

Sager, and Brittany Sager are the joint employers of Plaintiff and class members within the meaning of the FLSA and NYLL and are one and the same for the purposes of federal and state labor law liability.

## FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

42.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

43.     Plaintiff brings this FLSA collective action on behalf of herself and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective.

44.     Excluded from the FLSA Collective are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Defendants.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective.

45.     Plaintiff is unable to state the exact number of Hourly Employees within the FLSA Collective without discovery of Defendants' books and records but estimates that the FLSA Collective exceeds 100 individuals.

46.     Defendants improperly benefited from Plaintiff's and the FLSA Collective members' uncompensated work.

47.     Defendants' unlawful conduct has been widespread, repeated and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiff and the FLSA Collective.

48.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and, as such, notice should be sent to the FLSA Collective.  There are numerous similarly situated, current and former Hourly Employees who have been denied wages

in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action. Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

49.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

50.     Plaintiff brings this action on her own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

51.     Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Defendants. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

52.     Defendants operate and manage a home improvement company, employing over 100 Hourly Employees in New York during the relevant period and systematically fails to refuse to pay their Hourly Employees for all compensable hours worked. The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

53.     Plaintiff's claims are typical of the claims of other New York Class members because Plaintiff was a non-exempt hourly-wage Hourly Employee who was not compensated for work performed at Defendants' request both before her scheduled shift and after the conclusion of her scheduled shift and during uncompensated meal breaks.

54.     Plaintiff and other New York Class members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiff and other New York Class members have been injured in that they have been uncompensated or under-

compensated due to Defendants' common policies, practices, and patterns of conduct.

55.    Plaintiff will fairly and adequately protect the interests of the New York Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the New York Class.

56.    Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a)    Whether Defendants failed and/or refused to pay Plaintiff and the New York Class for all of the compensable time that they worked for Defendants while before and/or after the start of their scheduled shifts;

(b)    Whether Defendants failed to keep true and accurate time records for all hours worked by its Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

(c)    Whether Defendants failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by New York Labor Law §§ 195(1) and 195(3);

(d)    Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

(e)    Whether Defendants failed to comply with the posting and notice requirements of the NYLL;

(f)    Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendants' benefit which was not compensated;

(g)    Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h)    The nature and extent of class-wide injury and the measure of damages for those injuries.

57.    Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Members of the New York Class are readily identifiable from Defendants' own records.

58.    Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

59.    Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

60.    Plaintiff intends to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
(On Behalf of Plaintiff and the FLSA Collective)

61.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

62.     At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiff and each of the members of the FLSA Collective.

63.     Plaintiff consents in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as **Exhibit A** is a copy of Plaintiff's Opt-in Consent Form.  As this case proceeds, it is likely that other individuals will sign consent forms and join as opt-in plaintiffs.

64.     The FLSA requires each covered employer such as Defendants to compensate all non-exempt hourly employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.  The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

65.     Plaintiff and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

66.     Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff and the members of the FLSA Collective for all of their hours worked.

67.     By failing to compensate Plaintiff and the members of the FLSA Collective for minimum wage and overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.*

68.     By only paying FLSA Collective members based on their scheduled shifts, rather than the time spent working, Defendants have violated, and continue to violate the FLSA.

69.     By failing to pay FLSA Collective Members for time spent working during uncompensated meal breaks, Defendants have violated, and continue to violate the FLSA.

70.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

71.     Plaintiff, on behalf of herself and members of the FLSA Collective, seeks damages in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

72.     Plaintiff, on behalf of herself and the FLSA Collective, seeks recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**

**Violations of New York Labor Law – Nonpayment of Straight Wages**
**§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2**
**(On Behalf of Plaintiff and the New York Class)**

73.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

74.     Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

75.     Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class's wages that concern this lawsuit.

76.     Defendants were not authorized by Plaintiff or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

77.     Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

78.     Defendants have violated the New York Labor Law by failing to pay Plaintiff and the members of the New York Class for all compensable time and by failing to pay Plaintiff and the members of the New York Class for the straight time worked at the established rate.

79.     Plaintiff, on behalf of herself and the New York Class, seek the amount of underpayments based on Defendants' failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

80.     Plaintiff, on behalf of herself and the New York Class, seek all liquidated and punitive damages and penalties available under the NYLL.

### THIRD CAUSE OF ACTION

**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff and New York Class)**

81.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

82.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiff and the members of the New York Class.

83.     Defendants have failed to pay Plaintiff and members of the New York Class

overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

84.     By Defendants' knowing and/or intentional failure to pay Plaintiff and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

85.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

86.     Plaintiff, on behalf of herself and the New York Class, seek all liquidated and punitive damages and penalties available under the NYLL.

## FOURTH CAUSE OF ACTION

### New York Labor Law – Violation of the Notice and Recordkeeping Requirements
### (On Behalf of Plaintiff and the New York Class)

87.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

88.     Defendants have failed to provide Plaintiff and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

89.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

### New York Labor Law – Violation of the Wage Statement Provisions
### (On Behalf of Plaintiff and the New York Class)

90.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

91.     Defendants have not provided Plaintiff and all Hourly Employees a statement with each payment of wages listing each of the following: allowances, if any, claimed as part of the minimum wage; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL 195(3).

92.     Indeed, because Defendants failed to compensate Plaintiff and Hourly Employees for all hours worked, the pay statements provided to Plaintiff and Hourly Employees were inaccurate and incomplete, including failing to provide the correct number of hours worked and the correct amount of pay owed. Plaintiff and Hourly Employees were harmed as a direct result of Defendants' failure to provide accurate weekly wage statements, including hindering Plaintiff's ability to determine whether she was being compensated for all hours worked and whether she was being compensated at the appropriate rate of pay. As a result of Defendants' violation of NYLL § 195(3), Plaintiff and Hourly Employees were undercompensated for years.

93.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Kayce Smith, individually and on behalf of the FLSA Collective, seeks the following relief:

A.      Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiff Kayce Smith as the Representatives of FLSA Collective;

C.      Appointment of Plaintiff's counsel as Lead Counsel for the FLSA Collective;

D.      An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendants;

E.      An award of costs incurred herein, including expert fees;

F.      An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G.      An award of pre-judgment and post judgment interest, as provided by law;

H.      An award of injunctive relief to prevent against future wage and hour violations; and

I.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Kayce Smith, individually and on behalf of the New York Class, seek the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiff's counsel as Lead Counsel for the New York Class;

B.      Designation of Plaintiff Kayce Smith as the Representative of New York Class;

C.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Straight Wages):

1.      An award to Plaintiff and members of the New York Class of damages for

the amount of unpaid straight wages in addition to interest subject to proof;

        2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law;

D.      On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

        1.      An award to Plaintiff and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

        2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

E.      On the Fourth and Fifth Causes of Action (Violation of New York Labor Law – Notice and Recordkeeping Requirements and Wage Statement Provisions):

        1.      An award to Plaintiff and members of the New York Class of Damages for violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d).

        2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to NYLL §§198(1-b), 198(1-d).

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff and Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage,

closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Instagram, LinkedIn, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

### NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, they are hereby notified that Plaintiff, the FLSA Collective Class and the New York Class intend to charge and hold personally, jointly and severally liable, the ten largest shareholders of JKS, for all debts, wages, and/or salaries due and owing to Defendants' employees for services performed by them and Plaintiff has expressly authorized the undersigned, as her attorney, to make this demand on her behalf.

Dated: New York, New York
      November 30, 2023

                            McLAUGHLIN & STERN, LLP

                            By: _____
                                Brett Gallaway, Esq.
                                Lee Shalov, Esq.
                                Jason Giaimo, Esq.
                        260 Madison Avenue
                        New York, NY 10016
                        Telephone: (212) 448-1100
                        bgallaway@mclaughlinstern.com
                        lshalov@mclaughlinstern.com
                        jgiaimo@mclaughlinstern.com

                        *Attorneys for Plaintiff, the FLSA Collective and the New York Class*